## Kinster v. Smith.

## Kinster v. Wagoner et al.

November 1, 1949.

Davis M. Howerton for appellant.

V. H. Redwine and H. R. Wilhoit for appellees.

JUDGE KNIGHT—Reversing.

Leander Kinster, Herbert Smith and Charles Wagoner owned adjacent tracts of land on or near the waters of Little Caney Creek in Elliott County. The Wagoner tract was partly owned by others, probably brothers and sisters of Charles Wagoner, but their relationship is not shown by the record and this tract will be designated as the Wagoner tract. A dispute arose between the owners of the tracts as to a part of the boundary line between the various tracts, and this action started in October 1944 by Leander Kinster filing suit against Herbert Smith claiming that the latter had appropriated to himself part of a fifteen foot passway between the lands of Kinster and Smith; that Smith had cut the wire fence between these parties, filled up the passway with foreign matter and was claiming to own two acres of Kinster's land between said passway and the lands of one Henry Evans. He prayed that his title be quieted, that he be restored to all rights to the passway, and for damages in the sum of $250. Smith denied the allegations of the petition and asked dismissal thereof.

The second phase of the case was started by Charles Wagoner and other owners of the Wagoner tract filing suit against Leander Kinster alleging that he had wrongfully entered upon part of their land and removed valuable timber and fencing therefrom and was claiming ownership of part of their land thereby casting a cloud upon their title. They ask recovery of their land and $250 damages. Kinster denied the allegations of the petition.

The attorney who originally filed the suit for Kinster died, new counsel was substituted and the case dragged on without definite action until on March 14, 1947, when an agreed order was entered which was signed by counsel for all parties. Under the terms of this order it was agreed that J. A. Lewis should survey the land in dispute; that during the survey neither of the three interested parties should be present but that each party should select one man to go with the surveyor and assist in the survey; that all parties should furnish their title papers involving the tracts, to the surveyor; that the surveyor should file in the Elliott Circuit Court all his plats, notes and maps to become part of the record in these consolidated cases; that the

findings of the surveyor should be final in determining the boundary lines in dispute between the parties.

On April 3, 1947, the following order was entered in court: "This day came J. A. Lewis and filed his description of survey." Attached to this order was a detailed description of five tracts designated as tract No. 1 Charley Wagoner, 78 acres; tract No. 2 the 10 acre tract of Kinster; tract No. 3 the 39 acre tract of Kinster; tract No. 4 the 13 acre tract of Kinster; and tract No. 5 the 4 acre tract of Herbert Smith; together with a plat showing all the tracts but containing no further information or comment and no further report of the activities of J. A. Lewis in making the agreed survey.

More than a year later, on March 15, 1948, Leander Kinster filed exceptions to the surveyor's report of J. A. Lewis based on the following reasons: (1) that he had no notice that Lewis would make the survey when he did make it and he was unable to obtain any one to represent him at the survey; (2) that said Lewis did not ask for the title papers and consequently they were not used in making the survey; (3) that the plat filed by Lewis resulting from the survey is not correct; (4) that said Lewis had previously surveyed the Kinster lands and his plats then made do not conform to the plat made in the last survey and filed with his report; (5) that the report of Lewis wrongfully takes away from Kinster about 30 acres of land.

The proof taken in the case as to whether or not Kinster had notice when the survey was to be made is conflicting. His testimony indicates that he did not have sufficient notice and that he was unable to get a representative on the day the survey was made or to get his title papers. The testimony on the other side is that Jerry Lewis, a helper in the survey, was sent to notify Kinster that the survey was about to be made and that Kinster told them not to go on his place; that later Estill Atkins, the sheriff, was sent to notify Kinster, could not find him, but left word with his mother that the land would be surveyed that day, that the surveyor appointed Lige Skaggs to represent Kinster at the survey. As to the survey itself, which was made by order of the court, J. A. Lewis, the man who surveyed it, testified that in making it he had the title papers of all the parties to the agreement; that in his best judg-

ment the survey made under the court order is correct; that the only difference between the Kinster tract as previously surveyed by him for Kinster and the last survey made under court order is a difference of about one tenth of an acre and this was caused by Kinster starting him at the wrong point on the first survey; that all laps caused by the difference in the description in the title papers of the adjoining owners is reflected on the plat made by him under court order.

Under the evidence, which was taken before him and transcribed, the Chancellor on July 29, 1948, entered a short judgment that the plaintiffs and defendants are the owners of the lands in dispute according to the map or plat filed by J. A. Lewis, with the exception that Leander Kinster is adjudged to be the owner of the laps shown on said map, and adjudging that said Kinster pay the costs of this action.

It is from this judgment that this appeal is prosecuted. Appellant is represented on this appeal by new counsel who did not represent him in the lower court and it is his contention that the judgment is void because it is so uncertain that it cannot be carried out.

The judgment is brief, covering one page, including the caption. It contains no description of any property from which any deeds could be drawn except by reference to a plat filed in the record. It does not contain any description of any overlap shown as resulting from the survey. It leaves unsettled questions raised by the pleadings, such as passway rights, location of fences separating the tracts which gave rise to part of the dispute, the cutting and removal of timber, and damages claimed by each side. It is apparent that this is perhaps as complete a judgment as could have been entered under the report of the surveyor which was far from a complete and comprehensive one. It is evident from a letter written by the Chancellor and filed in the record that he realized the impossibility of entering a proper judgment on the state of the record and that he finally entered this one in an effort to get some final action on a case which had dragged on for five years and in which original counsel had died and substituted counsel had dropped out of the case. Present counsel for appellant, who came into the case only after judgment, with the assistance and cooperation of counsel for ap-

pellee may be able to straighten out the record and get it in condition for a proper judgment. The present judgment is so indefinite and uncertain that it cannot be intelligently carried out and would no doubt lead to future litigation between the parties or their successors in title. This is a case which the parties should get together and settle amicably, as they at one time attempted to do, since it is indicated in the record that the strips of land in dispute are of little value, far less than the costs already incurred.

Since we are of the opinion that the judgment appealed from is erroneous because of uncertainty, it is reversed and remanded for such further proceedings as may be necessary in order that a proper one may be entered.